A. B. HENDERSON *v.* THE STATE.

1. CONTINUANCE. — In an application for a second continuance, it is essential to show that the absent testimony upon which the application is based can be procured from no other source.

·2. SAME — DILIGENCE. — The mere affirmation of diligence in an affidavit for a continuance does not suffice. The facts must be stated — the date of the issuance of the subpœna, to whom given, when returned, etc. — to enable the court to make the legal deduction as to the diligence; for nothing is to be presumed to aid an application for a second continuance.

3. EVIDENCE — LEADING QUESTIONS. — The allowance of a leading question in the direct examination does not constitute material error, unless it appears that the rights of the defendant were prejudiced thereby, or that the

question was not allowed under the recognized exceptions to the general rule.

4. CHARGE OF THE COURT. — It is not error to refuse a charge asked, when it has been substantially given in the general charge. It is suggested, however, to inferior courts, that when doubts arise as to the propriety of giving charges asked by defendants, it is best to give them, as no harm could result from the giving.

5. SAME. — If the charge of the court is signed by the judge, it is certified as required by law.

6. VERDICT. — It is not essential that the verdict of the jury should name the offence of which it finds the defendant guilty. If it finds the "defendant guilty as charged in the indictment" it is sufficient, and identifies the offence.

APPEAL from the District Court of Brazos. Tried below before the Hon. S. FORD.

*Brietz & Clark,* for the appellant.

*George McCormick,* Assistant Attorney-General, and *W. B. Dunham,* for the State.

ECTOR, P. J.    The defendant, A. B. Henderson, *alias* Bud Henderson, was indicted in the District Court of Brazos County, on February 14, 1878, for the theft of one certain gelding, the property of J. R. Stewart.

At the September term of the court, the defendant submitted an application for a continuance, which was the second motion for continuance made by him. It was overruled by the court; to which ruling defendant took a bill of exceptions. The first assignment of error is that "the court erred in overruling defendant's motion for a continuance."

This application is as follows: " Now comes the defendant in the above cause, and, being sworn, says he cannot go safely to trial because of the following reasons, to wit:

" 1. Because of the absence of Wash Henderson, a material witness for his defence, who resides in Brazos County, Texas ; that due diligence has been used to procure the attendance of said witness, he having been summoned and

now being under recognizance to appear and testify. Said witness has been in attendance upon this term of the court since the calling of the criminal docket, from day to day, and is only now absent, as affiant is informed and believes, and so charges to be true, by reason of sickness. Said witness, as affiant is informed and believes, and so charges to be true, is now in bed sick, and unable to attend court. Affiant expects to prove by said witness as follows : It is charged that defendant took the gelding mentioned in the indictment in Brazos County, and the State will prove, or attempt to prove, that defendant so took the gelding in this county and carried it to Waco, in McLelland County, and there sold it, or offered it for sale. Now defendant expects to prove by the said witness that at the date alleged in the indictment, and the date it is alleged, or which will be attempted to be established in evidence, as the date of his taking said gelding to Waco and selling it, or offering it for sale, that defendant was at his home in Brazos County, and remained there, and did not go out of the county.

" 2. For the want of the evidence of L. M. Robertson, a material witness for his defence, and who resides in Brazos County, Texas. That defendant did not know, until just a while before the present term of this court, that he could prove by said witness the facts which he expects to establish by him. That he has used due diligence to procure the attendance of the said witness. That on February 14, 1878, and again since the present term of court commenced, and in ample time to secure the attendance of said witness, to wit, on the —— day of September, inst., he had a subpœna issued for said witness, but the same has been returned not found. That he expects to prove by the said witness that he, witness, saw one Jess Prather (about the time which it is alleged that defendant took the horse or gelding) in possession of the gelding (which it is charged defendant took), and that he, Prather, was in possession of the said gelding,

using it and removing with it from Brazos County, or about removing with it from Brazos County, or at least removing a portion of his family from said county. That he saw said Prather with the gelding in question, and that said Prather sought and tried to sell or trade said gelding to the witness Robertson. That said witness is not absent by the procurement or consent of defendant. That this application is not made for delay, but that justice may be done. That the testimony of said witness cannot be procured from any other source than from said witness ; and that defendant has reasonable expectation of procuring same by the next term of the court."

The above application was duly sworn to, and subscribed by the defendant.

We believe that the court did not err in overruling defendant's application for a continuance. It does not appear that the facts expected to be proved by the witness Henderson could be proved by no other witness, — this being a second application. And because no sufficient diligence was shown, in the motion for continuance, to procure the attendance of the other witness, Robertson.

The application for continuance on account of the witness L. M. Robertson is too vague and indefinite, both in stating the diligence used and the facts expected to be proved by him. It states that defendant procured subpœnas for him, but does not state in what case. It does not state the date when the second subpœna was issued, to whom it was given, or when returned. It does state that it was issued in time to have procured the attendance of the witness. It should have given the date when issued, to whom given, and when returned, to enable this court to determine whether defendant had used due diligence to procure the attendance of the witness Robertson at the trial. Nothing is to be presumed in aid of a second application for continuance. The mere affirmation of diligence in the affidavit for a continuance does not constitute the grounds for a con-

tinuance exacted by the statute. The facts must be stated, from which the court has to make the legal deduction of diligence. *Murray* v. *The State*, 1 Texas Ct. App. 174.

On the trial of the cause, the county attorney asked the State's witness, Joe Herbert, the following question : " Did Dr. Stewart tell you to turn this gelding out on the range when you had finished breaking him? " To which question defendant objected, because the same was leading, and because the answer suggested must be hearsay testimony, and because the same is irrelevant ; which objections were overruled by the court, and the witness Herbert was allowed to answer the question. This ruling of the court is assigned as error by defendant.

The allowance of a leading question in the direct examination of a witness does not constitute material error, unless it appears that the rights of a defendant are prejudiced thereby, or that the question was not allowed under recognized exceptions to the general rule. *Montgomery* v. *The State*, 1 Texas Ct. App. 140 ; Greenl. on Ev. 434, 435.

The evidence of Stewart, the owner of the gelding described in the indictment, shows that Herbert was his agent, breaking the animal, and his evidence in response to the question asked was not hearsay. 1 Greenl. on Ev. 101. Stewart had already testified that, a short time previous to the loss of the gelding, he had hired Herbert to break said gelding, and that he told Herbert, at the time of hiring him, that as soon as he should get the gelding broke to turn him loose on the range. The rights of defendant were not prejudiced by allowing the witness Herbert to answer the question.

What we have said on the third will apply to the next error assigned, which refers to the action of the court in refusing, on motion of defendant, to exclude from the jury the answer of the witness Herbert to the question of the county attorney already copied.

There was manifestly no error in the refusal of the court

to give the instructions asked by the defendant. The defendant "asked the court to charge the jury that, in order to convict the defendant, they must believe, beyond a reasonable doubt, that the gelding testified about by Dr. J. R. Stewart as the one stolen from him was the same identical gelding testified to by Viola Burton as being in the possession of the defendant; and this they must believe from the evidence." This instruction was refused, because, in the opinion of the court, it had already been given. The fourth instruction given by the court to the jury is as follows, to wit: "If the jury should believe from the evidence that the defendant was seen in possession of a gelding, and also should believe from the evidence that a gelding of J. R. Stewart had been taken by some one about the same time, then, to warrant them in convicting the defendant in this case they must be satisfied from the evidence, beyond a reasonable doubt, that the gelding seen in possession of defendant and the gelding described in the indictment as the property of J. R. Stewart was the same animal; and they must also be satisfied of the existence of every fact necessary to constitute theft as defined in the first article of these charges." We believe the charge asked was substantially given in the fourth subdivision of the charge of the court, which fairly presented to the jury the question of the identity of the animal seen by Viola Burton in possession of the defendant, and the one stolen from Stewart. No witness except Viola Burton testified to seeing defendant in possession of a gelding. The charge of the court directed the minds of the jury with proper force to the important fact on which the charge asked by defendant was based. We would suggest, however, when there is any doubt in the mind of the court as to the propriety of giving any instruction to the jury that is asked by a defendant, it would be well to give it. No harm would result from giving it, and, besides, much of the valuable time of this court would usually be saved.

In response to the objections made to the verdict of the jury, we believe they are not tenable.  It is insisted, on the part of the defendant, that "the verdict of the jury does not adjudge accused guilty, and name the offence of which he is found guilty."  The jury returned into court the following verdict: "We, the jury, find the defendant guilty as charged in the indictment, and assess his punishment in the penitentiary for a term of six years."  There can be no doubt of what offence the jury intended to find the defendant guilty.  In construing verdicts, the object is to arrive at the meaning of the jury.  We may look to the charge of the court in interpreting a verdict.  The objection to the verdict is altogether too technical.  *Lindsay* v. *The State*, 1 Texas Ct. App. 328 ; *Marshall and Williams* v. *The State*, Ct. App. October term, 1878.

The next assignment of error is: "It does not appear from the record that the charge of the court was given to the jury, and certified as required by law."  This assignment needs no remark beyond saying that the charge of the court is signed by the judge.  As he acts under his oath of office, this is a sufficient compliance with the statute.  Pasc. Dig., art. 3062 ; *Hubbard* v. *The State*, 2 Texas Ct. App. 506.

We believe the evidence is sufficient to sustain the judgment.  We have given the questions in the record before us that careful and patient consideration which the importance of the case demands ; and, after the strictest scrutiny, we find no error which would justify a reversal of the judgment, and it is, therefore, affirmed.

*Affirmed.*